AB:ADW

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

– against –

SCOTT CASTELLANOS,

              Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T
(T. 31, U.S.C., § 5332)

Case No. 20-MJ-785

EASTERN DISTRICT OF NEW YORK, SS:

      Daniel Symonds, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

      Upon information and belief, on or about September 9, 2020, within the Eastern District of New York, the defendant SCOTT CASTELLANOS did knowingly and with the intent to evade the currency reporting requirements under Title 31, United States Code, Sections 5316(a)(1)(A) and 5316(b), conceal more than $10,000 in currency, to wit, approximately $558,750 in United States currency, in articles of luggage and other containers, and transport and transfer and attempt to transport and transfer such currency from a place within the United States to a place outside of the United States.

      (Title 31, United States Code, Section 5332)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. Your deponent has been a Special Agent with HSI for approximately 11 years. I am familiar with the facts contained in this affidavit as a result of my participation in the investigation of the bulk cash smuggling discussed in this affidavit, which includes, but is not limited to, my review of the file and conversations with other law enforcement personnel assisting with the investigation.

2. On or about September 9, 2020, the defendant SCOTT CASTELLANOS, a citizen of the United States of America, attempted to board Delta flight 450 to Santiago, Dominican Republic, departing from John F. Kennedy International Airport in Queens, New York. When CASTELLANOS passed through a routine x-ray scan during the security screening process, officials observed that CASTELLANOS appeared to be carrying a quantity of United States currency in excess of $10,000 in his carry-on luggage.

3. Subsequently, officers from Customs and Border Protection ("CBP") approached defendant SCOTT CASTELLANOS in the vicinity of the jetway. The CBP officers informed CASTELLANOS of the currency reporting regulations, and presented a customs form for CASTELLANOS.

4. After the defendant SCOTT CASTELLANOS confirmed that he understood his reporting obligations, the CBP officers asked him to declare all of the currency and monetary instruments belonging to him. The CBP officers also informed the defendant that he was required to declare all currency that the defendant was carrying in

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all the facts and circumstances of which I am aware.

checked luggage and carry-on luggage, whether in the form of cash, checks, money orders or other negotiable instruments. The defendant then declared that he was transporting $18,000 in United States currency, which he specified in writing on the FinCEN 105 Form. CASTELLANOS then produced approximately $18,000 from his person and his carry-on luggage.

5.  Examination of several pieces of luggage checked by the defendant SCOTT CASTELLANOS revealed approximately $594,000 in additional United States currency, concealed inside of socks and window curtains. A total of approximately $612,000 in United States currency was found on the defendant's person and within the defendant's carry-on and checked luggage.

6.  After CBP agents observed the approximately $594,00 in cash inside of defendant SCOTT CASTELLANOS's checked luggage, they asked CASTELLANOS if there was any money inside of his checked luggage. CASTELLANOS said no twice.

7.  Law enforcement agents then took defendant SCOTT CASTELLANOS into custody. Law enforcement advised CASTELLANOS of his <u>Miranda</u> rights, and CASTELLANOS waived his rights and agreed to speak to law enforcement without an attorney. After being confronted with the undeclared cash in his checked luggage, defendant SCOTT CASTELLANOS told law enforcement agents that he was aware that his checked luggage contained significant quantities of cash that he should have declared on a customs form. The defendant further stated that the money in his checked luggage came from an individual in the Bronx who was purchasing real estate in the Dominican Republic from the defendant's father, and that the defendant had been asked to transport the purchase

money to the Dominican Republic in return for being allowed to keep approximately $8,000 of the cash.

8. The defendant SCOTT CASTELLANOS gave law enforcement consent to search the contents of his personal cell phone. On the cell phone, law enforcement observed a text message exchange with the individual who purportedly was purchasing property from the defendant's father ("Individual-1"). In the text message exchange, Individual-1 advises the defendant to stay calm when he goes through security, reassures the defendant that the undeclared cash would not be detected and asks that the defendant delete the text message exchange after the defendant boards his plane.

WHEREFORE, your deponent respectfully requests that SCOTT CASTELLANOS be dealt with according to law.

*Daniel Symonds*
Daniel Symonds
Special Agent
Homeland Security Investigations

Sworn to before me by telephone this
10 day of September, 2020

*Cheryl Pollak*
HONORABLE CHERYL L. POLLAK
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK